UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

99 NOV 18 PM 2: 48

U.S. DISTRICT COURT
N.D. OF ALABAMA

TOBBIE L. WELCH, )
)
    Plaintiff, )
)
vs. )  Civil Action No. CV-96-S-1209-NE
)
J. TYLER RODEN, in his )
official capacity as Sheriff )
of Cullman County; LARRY )
WALDROP, in his official )
capacity as Chief Deputy )
Sheriff of Cullman County; )
GEORGE SPEAR, in his official )
capacity as Chairman of the )
Cullman County Commission; )
DOUGLAS TERRY, in his )
official capacity as )
Associate Commissioner of )
the Cullman County )
Commission; and RONALD )
DILLASHAW, in his official )
capacity as Associate )
Commissioner of the Cullman )
County Commission, )
)
    Defendants. )

ENTERED

NOV 18 1999

## MEMORANDUM OPINION

This action is before the court on defendants' motion for

summary judgment as to plaintiff's claims under Title VII of the

Civil Rights Act of 1964, as amended by the Civil Rights Act of

1991, 42 U.S.C. § 2000e et seq., the Fourteenth Amendment to the

United States Constitution, and 42 U.S.C. § 1983. Upon

consideration of the motion, briefs, evidentiary submissions, and

pleadings, this court finds that defendants' motion is due to be





denied.[1]

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See generally Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant discharges this burden by showing the court there is an absence of evidence to support the non-movant's case. *See Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*). Rule 56 permits the

---

[1] In the "Statement of the Case" section of their brief in support of the motion for summary judgment, defendants refer the court to a number of affirmative defenses pled in their answer and amended answer. (*See* Defendants' brief and evidentiary materials in support of the motion for summary judgment, at 2 & n.1.) Defendants failed to make arguments in support of these defenses in the body of their motion for summary judgment. Instead, defendants concentrated on the substantive aspects of plaintiff's claims, addressed *infra*. The court assumes that the body of defendants' summary judgment brief sets forth their best arguments as to why this case should not proceed to trial, and limits its review accordingly.

2



movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593.

In deciding whether the movant has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See generally Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that

3

inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to plaintiff.

## II. FACTUAL BACKGROUND

Plaintiff was employed by the Cullman County Sheriff's Department (the "Department") on two separate occasions. She worked as an investigation secretary from 1988 until 1990. After a brief hiatus, plaintiff returned to the Department as a dispatcher. She held this position from some time in 1990 until

4

the date of her termination, April 21, 1995. From 1988 to 1995,

three different sheriffs served Cullman County: Wendell Roden,

David Laney, and one of the current defendants, Tyler Roden.[2]

Plaintiff suffered no disciplinary action during her tenure

with the Department until her termination in April of 1995. (*See*

Welch depo. (Vol. 1) at 35.) On the whole, plaintiff's peers

considered her an asset to the department and a trustworthy person.

(*See* Roden depo. at 57; Lambert depo. at 11-12.) Plaintiff filed

a lawsuit against David Laney, both individually and in his

official capacity as Sheriff of the Department, and others in 1992,

alleging discrimination in the compensation paid female employees

of the department. *See Welch v. Laney et al.*, Civil Action No. CV-

92-N-1663-NE (N.D. Ala. July 20, 1992) (Nelson, J.); *see also* Welch

depo. (Vol. 1) at 13. Defendant Roden inquired about the status of

that lawsuit on two occasions, once he became Sheriff of the

Department.[3] (*See* Roden depo. at 19-26.) The Honorable Edwin L.

Nelson dismissed that action with prejudice pursuant to the

stipulation of the parties and Federal Rule of Civil Procedure 41,

---

[2] Defendant Roden defeated Laney in the 1994 general election for Sheriff of Cullman County, and took office in January of 1995. (*See* Welch depo. (Vol. 1) at 48.)

[3] To the extent plaintiff sued Laney in his official capacity as Sheriff of Cullman County, Roden assumed Laney's role in this lawsuit upon taking his oath of office during January of 1995.

5



on November 4, 1999.[4]

The events that triggered plaintiff's termination from the Department and this action occurred on April 17, 1995. Plaintiff arrived at the Department at 7:30 a.m., to begin her normal shift. Two other dispatchers, Ron Burrow and Gordon Dunigan, were working alongside plaintiff in the dispatch area. (See Welch depo. (Vol. 1) at 71.) Shortly after her arrival, Burrow told plaintiff that someone named "Trina" was on the telephone and asking to speak with her. (See id. at 80.) Plaintiff took the call on the "regular" Department line, not the "emergency," 911 telephone line. (See id. at 85.) In a short conversation, "Trina" asked plaintiff whether an assault report had been filed against Michael Stewart, an attorney who resides in Cullman County. (See id. at 83.) Plaintiff replied that, to her knowledge, no report had been filed. (See id.) "Trina" asked plaintiff to call her if plaintiff heard from either Mr. Stewart or his wife. (See id.) After ending the conversation, plaintiff surmised that "Trina" was Dettrina Peinhardt, Stewart's office secretary.[5] (See id. at 84.)

---

[4] In whole cloth, Judge Nelson's order reads as follows: "Plaintiff and defendants having stipulated pursuant to Rule 41, Federal Rules of Civil Procedure, that this action may be dismissed with prejudice, it is hereby ... ORDERED, ADJUDGED and DECREED that this action be, and the same hereby is DISMISSED with prejudice, costs taxed as paid."

[5] Plaintiff later discovered that the "Trina" whom she thought was on the line was not in fact Dettrina from Mr. Stewart's office. (See id. at 84, 86-87.)

6



While plaintiff was engaged in that telephone conversation, Burrow took a call from a nurse at the Cullman County Regional Medical Center. (*See id.* at 70.)  The nurse informed Burrow that Stewart's wife had been admitted to the hospital for treatment of injuries suffered in an assault.  (*See* defendant's evidentiary submissions in support of motion for summary judgment, Exhibit "F" at 13.)  The nurse communicated Ms. Stewart's desire to file an "assault report."  At this point, Lieutenant Philip Lambert, one of plaintiff's and Burrow's supervisors, entered the dispatch area and interceded in the conversation between Burrow and the nurse.  (*See* Welch depo. (Vol. 1) at 72.)

Lambert told the nurse he would send an officer to the hospital to take an assault report from Ms. Stewart.  (*See* defendant's evidentiary submissions in support of motion for summary judgment, Exhibit "F" at 13.)  Lambert then informed Burrow and plaintiff of the situation and instructed them to keep Ms. Stewart's name off the radio, or "off the air."  (*See id.*) Finally, Lambert directed plaintiff to dispatch Officer Wade Yarborough to the hospital to take the assault report.  (*See* Welch depo. (Vol. 1) at 73.)

---

She never identified this initial caller, and her identity remains unknown.

7



Soon thereafter, Burrow received an incoming call from an individual claiming to be Ms. Stewart's mother. (*See* Burrow depo. at 31-32.) Burrow informed the caller that Ms. Stewart had asked to make an assault report and that the Department had dispatched an officer to the hospital. (*See id.* at 32.) Burrow's conversation with the person claiming to be Ms. Stewart's mother prompted plaintiff to call the law office of Mr. Stewart, and ask to speak to "Trina." (*See* defendant's evidentiary submissions in support of motion for summary judgment, Exhibit "F" at 23.) Plaintiff summarized the call that Burrow had received from a nurse at the hospital and informed "Trina" that Ms. Stewart planned to file an assault report.[6] (*See id.* at 24.) "Trina" told plaintiff that the Stewarts had been engaged in a "knock down drag out" fight over the weekend. (*See id.*) Minutes later, Mr. Stewart called plaintiff on the "regular" Department telephone line, saying he wanted to file a report himself. (*See id.*) He told plaintiff he was at his residence. (*See id.*)

Plaintiff relayed this information to Lambert, who instructed her to send Officer Yarborough to Stewart's residence once he

---

[6] Plaintiff stated in deposition that the type of information she relayed to "Trina" was "released all the time" to individuals calling into the dispatch area. (Welch depo. (Vol. 1) at 100.)

8



concluded his duties at the hospital.  (*See id.*)  Plaintiff telephoned Mr. Stewart at home to let him know Officer Yarborough was on his way.  (*See id.*)  Mr. Stewart called plaintiff back after a short period to let her know that Officer Yarborough's presence was not required, because his wife had returned to get her belongings.  (*See id.*)  Later in the day on April 17th, Mr. Stewart requested that an officer stop by his office, so that he could make a report regarding the alleged assault.  (*See id.*)

Ms. Stewart filed a formal complaint with the Department on April 19, 1995, claiming that her husband's knowledge of her intent to file an assault report was attributable to a Departmental employee.  (*See id.* at 5.)  More specifically, Ms. Stewart stated that her husband's knowledge of this information, which she apparently wanted to keep confidential, potentially put her in further danger.  (*See id.*)  Ms. Stewart surmised that plaintiff may have notified Mr. Stewart of her activities, because "she and Michael talked to each other by phone a lot."  (*Id.*)

Sheriff Roden and Chief Deputy Sheriff Larry Waldrop conducted an investigation of Ms. Stewart's complaint by taking the statements of plaintiff, Burrow, Lambert, Yarborough, and other Department employees involved in the events of April 17th.  Roden

9

terminated plaintiff's employment with the Department for "misconduct and insubordination" on April 21st. (Roden aff. at 1.) While Roden admitted that an employee's prior work record and length of service may factor into a disciplinary decision, he concluded that termination of plaintiff was the only proper course for the following reasons:

> Because she had initiated contact with the suspect in the case or initiated contact with agents of the suspect, and I felt that she was insubordinate. I felt that she knew full well the circumstances in this case, and I believe that she knew the sensitivity and nature of the case, and she initiated contact with the suspect which [sic] giving him knowledge and information that was trying to be prevented that he get.

(Roden depo. at 95, 39-40.) Burrow, on the other hand, was not disciplined for the events of April 17th. Moreover, on the date plaintiff was terminated, nine female employees of the Department previously had either resigned, transferred, or been terminated during defendant Roden's tenure as Sheriff. (See Plaintiff's evidentiary submissions in opposition to defendant's motion for summary judgment, Exhibit "11.") In contrast, only one male employee had resigned from the Department during the same period. (See id.)

Plaintiff filed a grievance with the Cullman County Personnel Board following her termination. After a hearing, the board upheld

10

Roden's decision. The Cullman County Commission also affirmed Roden's decision to terminate plaintiff. Plaintiff instituted her action in this court on May 8, 1996, alleging that defendants discriminated against her on the basis of her sex and in retaliation for her earlier lawsuit against the Department.

### III. DISCUSSION

**A. Plaintiff's Claim of Sex Discrimination**

Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(a)(1), provides that:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ....

Claims brought under 42 U.S.C. § 1983 that allege discrimination in violation of the Fourteenth Amendment equal protection clause are analyzed according to the Title VII framework discussed *infra*:

> Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under [section 1983], the legal elements of the claim are identical. A plaintiff asserting either claim must prove intentional discrimination.

*Stallworth v. Schuler*, 777 F.2d 1431, 1432 (11th Cir. 1985). The familiar burden-shifting framework articulated by the United States

11



Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and subsequent cases, thus applies equally to plaintiff's claim of sex discrimination under both Title VII and § 1983.   Plaintiff is charged with the initial burden of setting forth a *prima facie* case of intentional discrimination.  *See id.* at 802, 93 S.Ct. at 1824; *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746-47, 125 L.Ed.2d 407 (1993).  Plaintiff's establishment of a *prima facie* case creates a rebuttable presumption of unlawful discrimination.  *See Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

Defendants may rebut this presumption by articulating a legitimate, nondiscriminatory reason for plaintiff's termination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.  If defendants do so, the burden shifts back to plaintiff, who must show that defendants' proffered reason is pretextual.  *See Hicks*, 509 U.S. at 515, 113 S.Ct. at 2752.  Regarding this third stage of the *McDonnell Douglas* framework, the Eleventh Circuit has noted that "a plaintiff is entitled to survive summary judgment ... if there is sufficient

12

evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

Title VII plaintiffs establish a *prima facie* case of sex discrimination in the disciplinary termination of employment by showing:

> (1) that the plaintiff belongs to a class protected under Title VII; (2) that the plaintiff was qualified for the job; (3) <u>that the misconduct for which the employer discharged the plaintiff was the same or similar to what a similarly situated [male] employee engaged in, but that the employer did not discipline the other employee similarly</u>.

*Lathem v. Department of Children and Youth Services*, 172 F.3d 786, 792 (11th Cir. 1999) (emphasis supplied).[7] There is no question in this case that plaintiff satisfies the first two elements of a *prima facie* case.

Further, plaintiff has met her burden of showing that she was treated differently than a "similarly situated" male employee. In *Holifield v. Reno*, 115 F.3d 1555 (11th Cir. 1997), the Eleventh

---

[7] An alternative third element to plaintiff's *prima facie* case is replacement by an individual outside the protected class. *See Walker v. NationsBank of Florida*, 53 F.3d 1548, 1556 (11th Cir. 1995). It is undisputed, however, that the next three dispatchers hired by the Department after plaintiff's termination were female. (Roden aff. at 2.) Thus, plaintiff cannot avail herself of this argument.

13



Circuit elaborated on the "similarly situated" requirement:

> To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated <u>in all relevant respects</u>. In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, <u>it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways</u>.

*Id.* at 1562 (citations omitted) (emphasis supplied). Plaintiff and another dispatcher, Ron Burrow, were "similarly situated" with respect to the events that occurred on April 17th. Not only did they hold the same job title and work side-by-side on the same shift, they also received the same instructions from their superior, Lieutenant Lambert. Both plaintiff and Burrow were told to "keep the names off the radio" with respect to the incident between the Stewarts. Both plaintiff and Burrow relayed information of the assault report being filed by Ms. Stewart over the telephone after receipt of these instructions from Lambert. While plaintiff was certain she spoke with Mr. Stewart's office secretary, Burrow could not conclude definitively that he spoke with Ms. Stewart's mother. Neither plaintiff nor Burrow violated any express instruction given by Lambert specific to the situation between the Stewarts.

Yet, plaintiff was terminated for her actions on April 17th,

14



while Burrow was subjected to no disciplinary action.  Burrow's

actions were not even investigated by the Department.  In sum,

plaintiff has shown that defendants "treated similarly situated

employees outside [her] classification more favorably," which leads

this court to conclude she has established a *prima facie* case of

sex discrimination.  *Holifield*, 115 F.3d at 1562.

Plaintiff does not contest that defendants have successfully

articulated legitimate, non-discriminatory reasons for her

termination: misconduct and insubordination.  Rather, she argues

these reasons are pretextual. Under *Combs*, plaintiff has set forth

sufficient evidence to create a genuine issue of fact regarding the

truth of defendants' non-discriminatory reasons.  Her expedited

termination, when coupled with Burrow's disparate treatment and the

Department's "track record" with respect to female employees,

"permit[s] a reasonable factfinder to conclude that the employer's

proffered 'legitimate reasons were not what actually motivated its

conduct."   *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v.*

*Southern Railway Company*, 37 F.3d 603, 605 (11th Cir. 1994)).

**B.   Plaintiff's Claim of Retaliation**

Title VII also prohibits discrimination based on an employee's

decision to pursue legally-protected rights.   According to 42

15

NOV-18-1999  16:42       USDC HUNTSVILLE                    256 551 0741       P.17

U.S.C. § 2000e-3(a):

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

"To establish a *prima facie* case of retaliation, plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; (3) a causal link between the protected expression and the adverse action."  *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (assessing ADA retaliation claims under same framework as Title VII retaliation claims); *see Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (outlining Title VII retaliatory discharge framework).  Plaintiff easily satisfies the first two prongs of this framework.  She engaged in statutorily protected expression by filing a lawsuit alleging sex discrimination with respect to compensation. She suffered an adverse employment action when she was terminated on April 21, 1995.  The closer question here concerns whether plaintiff has established a causal link between the filing of the lawsuit and her termination on April 21st.

16



To establish the proper causal connection, plaintiff must show at a minimum that the adverse employment action <u>followed</u> the statutorily protected activity. *See Griffin v. GTE Florida, Inc.*, 182 F.2d 1279, 1284 (11th Cir. 1999). Plaintiff has met this minimum requirement — she initiated her lawsuit in 1992, and was terminated in 1995.

The Eleventh Circuit has noted that "a plaintiff need only establish that 'the protected activity and the adverse action were <u>not wholly unrelated</u>'" in order to establish the requisite causal link. *Goldsmith*, 996 F.2d at 1163 (citations omitted) (emphasis supplied). Awareness by the employer of the employee's statutorily protected activity is also a minimum requirement. *See id.* The Eleventh Circuit has noted that "proximity in time" between the protected action and the alleged retaliatory action contributes to creation of the proper causal link. *See Goldsmith*, 996 F.2d at 1163-64 (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-01 (11th Cir. 1986)).

This court concludes that plaintiff has established a *prima facie* case of retaliation, because the filing of her lawsuit in 1992 and her subsequent termination in 1995 are "not wholly

17

unrelated." *Goldsmith*, 996 F.2d at 1163. Defendant Roden asked plaintiff on two separate occasions whether her lawsuit was still pending. The fact that three years had passed between plaintiff's filing of the lawsuit and her termination does not diminish plaintiff's argument; rather, the relevant point is that her prior lawsuit against Roden in his official capacity, among others, was still pending at the time the adverse employment action was taken. This conclusion comports with the Eleventh Circuit's broad interpretation of the causal link requirement. *See EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571 (11th Cir. 1993) ("This court has interpreted the causal link requirement broadly; a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.")

Upon establishment by the plaintiff of a *prima facie* case, the burden-shifting framework delineated in section III.A *supra* applies in the retaliation context. *See Goldsmith*, 996 F.2d at 1162-63. Again, plaintiff does not contest defendants' legitimate, non-discriminatory reasons for her termination: misconduct and insubordination. Moving to the issue of pretext, plaintiff again has satisfied the Eleventh Circuit's requirement in *Combs* of setting forth sufficient evidence to create a genuine issue of fact

18

regarding the truth of defendants' non-discriminatory reasons. *See*

*Combs*, 106 F.3d at 1538.  Taking the facts in the light most

favorable to plaintiff, a reasonable fact finder could conclude

that plaintiff's filing of a prior lawsuit was the motive behind

her termination.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary

judgment is denied.  An order consistent with this memorandum

opinion shall be entered contemporaneously herewith.

DONE this the _18th_ day of November, 1999.

United States District Judge

19