FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

00 JUN -5 AM II: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

TOBBIE L. WELCH,              )
                             )
        Plaintiff,           )
                             )
vs.                          )   Civil Action No. CV-96-S-1209-NE
                             )
J. TYLER RODEN, in his       )
official capacity as Sheriff )
of Cullman County, Alabama;  )
LARRY WALDROP, in his official)
capacity as Chief Deputy     )
Sheriff of Cullman County;   )
GEORGE SPEAR, in his official )
capacity as Chairman of the  )
Cullman County Commission;   )
DOUGLAS TERRY, in his        )
official capacity as         )
Associate Commissioner of    )
the Cullman County           )
Commission; and RONALD       )
DILLASHAW, in his official   )
capacity as Associate        )
Commissioner of the Cullman  )
County Commission,           )
                             )
        Defendants.          )

ENTERED

JUN  5 2000

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff, Tobbie Welch, commenced this action on May 8, 1996,

seeking relief for an allegedly unlawful termination of her

employment as a dispatcher for the Cullman County, Alabama

Sheriff's Department. She sued five defendants: the Sheriff and

Chief Deputy Sheriff of Cullman County, Alabama,[1] and all members

_____

[1] Tyler Roden was sued in his capacity as the Sheriff of Cullman County;
Larry Waldrop was sued in his capacity as Chief Deputy Sheriff.

of the Cullman County Commission.[2]  Plaintiff sued the Cullman County Sheriff and Chief Deputy Sheriff for violations of Title VII and 42 U.S.C. § 1983, and the Cullman County Commissioners for violations of 42 U.S.C. § 1983.  All defendants were sued in their official capacities only.

The factual allegations forming the basis of plaintiff's complaint are fully explicated in this court's memorandum opinion denying summary judgment, entered on November 18, 1999 (Doc. No. 82).  In brief, however, plaintiff contends she was separated from her employment on the basis of sex, and in retaliation for filing a lawsuit against the previous occupants of the positions of Sheriff, Chief Deputy Sheriff, and member of the Cullman County Commission in the United States District Court for the Northern District of Alabama.  *See Welch v. Laney et al.*, Civil Action No. CV-92-N-1663-NE) (complaint filed in that action on July 20, 1992); *see also Welch v. Laney*, 57 F.3d 1004 (11th Cir. 1995).  She asserts such conduct not only violated Title VII, but also 42 U.S.C. § 1983, based on the equal protection clause of the Fourteenth Amendment to the United States Constitution.[3]

---

[2] Plaintiff originally named Cullman County Commissioners Norman Tucker, Douglas Terry, and Ronald Dillashaw as defendants.  Current defendant George Spar was substituted in place of Norman Tucker by an order entered on March 17, 1997 (Doc. No. 24).

[3] Because plaintiff's Title VII and Section 1983 claims arise out of the

Defendants filed motions to dismiss (Doc. Nos. 10, 11, & 12), an answer (Doc. No. 13), and an amended answer (Doc. No. 44) in response to plaintiff's complaint. This court overruled defendants' motions to dismiss without prejudice on October 25, 1996 (Doc. No. 17), because a stay had been entered in the action on August 23, 1996.[4] A second stay was imposed by this court on August 19, 1997 (Doc. No. 31), pending an *en banc* decision by the Eleventh Circuit in *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285 (11th Cir.), *cert. denied*, 525 U.S. 874, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998). This court lifted the stay on September 15, 1998, following the issuance of a mandate in *Turquitt*. At no point after the lifting of the second stay did defendants renew their respective motions to dismiss.[5]

Defendants moved for summary judgment on April 5, 1999 (Doc.

---

same factual circumstances, the Title VII framework for establishing intentional discrimination applies to both claims. *See generally* Busby v. City of Orlando, 931 F.2d 764, 777 (11th Cir. 1991); Whiting v. Jackson State University, 616 F.2d 116, 120-21 (5th Cir. 1980).

[4] The original stay was ordered based on the filing of a state court action by defendants' insurance carrier, which dealt with the carrier's duty to defend this lawsuit or indemnify defendants in the event judgment is entered against them.

[5] The court notes that defendants represented to this court that the *Turquitt* decision "will be dispositive of a controlling issue pending between the parties in this action." (Doc. No. 28, at ¶ 1.) Aside from defendants' oblique and unsupported references to the issue decided in *Turquitt* in their motions to dismiss, answer, and amended answer, they have yet to employ the Eleventh Circuit's rationale in *Turquitt* in arguing that plaintiff's claims are due to be dismissed as to certain defendants.

No. 53).  In their brief in support of summary judgment (Doc. No.

54), defendants made the following statements in a section entitled

"Statement of the Case":

> On June 26, 1996, the defendants filed an answer
> denying any and all liability to the plaintiff and
> asserting that (1) because the individuals were all sued
> in their official capacity, the claims against those
> individuals were actually against a government entity,
> therefore, the plaintiff could not recover punitive
> damages; (2) no claims could be maintained against the
> individual defendants because they were sued in their
> official capacity; and (3) defendant's actions were in
> good faith and based upon reasonable, non-pretextual
> factors other than gender or retaliation.
>
> . . .
>
> On or about November 10, 1998, the defendants filed an
> amended answer asserting that (1) the defendants
> exercised reasonable care to prevent discriminatory
> conduct; (2) defendants Roden and Waldrop were not
> "employers" pursuant to 42 U.S.C. Section 2000e(b); (3)
> defendant Waldrop was not named in the EEOC charge and
> therefore plaintiff could not maintain a Title VII claim
> against him; and other affirmative defenses.

(Doc. No. 54, at 1-2.)  Defendants further included a footnote that

stated the following:

> The individual defendants are all sued in their
> [official] capacity and therefore any claims asserted
> against them would constitute a claim against Cullman
> County, Alabama.  The defendants adopt and incorporate
> herein all facts and case authority asserted in their
> answers and motions to dismiss in that regard.

(*Id.* at 2 n.1.)  From that point on in their brief, defendants

focused on the substantive merits of plaintiff's claims.

4

This court denied defendants' motion for summary judgment in its entirety, and noted the following in a footnote to its memorandum opinion:

> In the "Statement of the Case" section of their brief in support of the motion for summary judgment, defendants refer the court to a number of affirmative defenses pled in their answer and amended answer. ... Defendants failed to make arguments in support of these defenses in the body of their motion for summary judgment. Instead, defendants concentrated on the substantive aspects of plaintiff's claims, addressed *infra*. The court assumes that the body of defendants' summary judgment brief sets forth their best arguments as to why this case should not proceed to trial, and limits its review accordingly.

(Doc. No. 82, at 2 n.1.)  Defendants never moved this court to reconsider its decision to deny summary judgment, even though the court expressly noted it would not entertain the brief arguments in support of dismissal set forth by defendants in their overruled motions to dismiss, answer, and amended answer.  This court referred the action to mediation subsequent to the denial of summary judgment.  Despite requesting additional mediation time, the controversy was not resolved.

The court accordingly conducted a status conference on April 28, 2000, and informed the parties of numerous legal issues that remained unresolved.  The parties agreed with the court that the action would not be ready for trial until those legal issues were addressed.  Accordingly, in an order entered that same day (Doc.

5

No. 93), the court directed the parties to submits briefs and relevant evidentiary submissions on a number of issues.   Upon consideration of those briefs, as well as pertinent portions of the case file, the court reaches the following conclusions.

## II. DISCUSSION

**A.   Should The Sheriff Of Cullman County, Alabama, Tyler Roden, Be Considered Plaintiff's "Employer" For Purposes Of Title VII Of The Civil Rights Act Of 1964?**

In a word, "yes."

The language of sub-sections (a) and (b) of  42 U.S.C. § 2000e, when coupled with the Eleventh Circuit's decision in *Welch v. Laney*, 57 F.3d 1004 (11th Cir. 1995), compels the conclusion that Roden is plaintiff's "employer" for Title VII purposes.   42 U.S.C. § 2000e provides, in relevant part, that:

> **(a)** The term "person" includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, or receivers.
>
> **(b)** The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person ....

*Welch v. Laney* was the predecessor action by the present plaintiff,

commenced against a number of defendants, including the previous Sheriff of Cullman County (David Laney) in his official capacity, for alleged violations of 42 U.S.C. § 1983, the Equal Pay Act, and Title VII.  The Eleventh Circuit reversed the district court's decision dismissing plaintiff's Equal Pay Act and Title VII claims against the Sheriff in his official capacity, saying:

> As stated above, the district court apparently dismissed the balance of Welch's Equal Pay Act [and Title VII] claims on the ground that none of the other named defendants qualified as Welch's employer .... The former Fifth Circuit considered "the total employment situation" in determining whether an entity qualified as an "employer" ....  In particular, the court asked, *inter alia*: "whether or not the employment [took] place on the premises of the [alleged employer]; how much control [did] the [alleged employer] exert on the employees; and, [did] the [alleged employer] have the power to hire, fire, or modify the employment condition of the employees?"
>
> ...
>
> Welch's employment took place on Sheriff Laney's premises, the Cullman County Sheriff's Department, not on any premises of the [county] commissioners.
>
> ...
>
> In contrast, the Sheriff was authorized by 1980 Ala. Acts 80-549 to hire, promote or demote Sheriff's Department employees, including Welch, and to set employment policies for the Sheriff's Department.
>
> ...
>
> The body of Welch's complaint sufficiently stated that Sheriff Laney was liable to Welch under Title VII in his

7

> capacity as her employer, not in any individual capacity.
> We reverse the dismissal of Welch's Title VII claim
> against Sheriff Laney in his official capacity as her
> employer.

*Welch*, 57 F.3d at 1011.

For the same reasons, Sheriff Roden should be considered

plaintiff's "employer" for purposes of Title VII liability in the

present action.

**B.   Can Plaintiff Recover Punitive Damages Against Sheriff Roden
For A Maliciously And Recklessly Indifferent Violation Of
Title VII?**

The short answer to this query is "no."

"Plaintiff concedes that Title VII does not allow punitive

damages to be awarded against any governmental entity[,] and

because the Sheriff in his official capacity is a governmental

entity, the answer to this question is 'no'." (Doc. No. 96, at 2.)

Plaintiff's concession comports with relevant law.  As discussed

more fully *infra*, plaintiff's Title VII claim against Sheriff Roden

in his official capacity essentially is against the State of

Alabama; and 42 U.S.C. § 1981a(b)(1) provides:

> A complaining party may recover punitive damages under
> this section against a respondent (<u>other than a
> government, government agency, or political subdivision</u>)
> if the complaining party demonstrates that the respondent
> engaged in a discriminatory practice or discriminatory
> practices with malice or reckless indifference to the
> federally protected rights of an aggrieved individual
> (emphasis supplied. [Emphasis supplied.]

Stated differently, "Title VII plaintiffs are not entitled to recover punitive damages against state governmental agencies or officials." *Biggs v. State of Florida Board of Regents*, 1998 WL 344349, No. 1:96-CV-185-MMP (N.D. Fla. June 11, 1998) (collecting authorities).

### C.   Does Eleventh Amendment Immunity Apply Fully, Partially, Or Not At All To Plaintiff's Claim Against Sheriff Roden Under 42 U.S.C. § 1983?

The answer to this question is "only partially."

It is well-established under the law of the State of Alabama and the Eleventh Circuit that Alabama Sheriffs are law-enforcing arms of the State. *See generally* Ala. Const. of 1901, Art. V, § 112; *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1288 (11th Cir. 1998); *Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987). Because a suit against Roden, in his official capacity as the Sheriff of Cullman County, essentially is a suit against the State of Alabama, he arguably may claim the benefits of Eleventh Amendment immunity. The Eleventh Amendment[6] applies equally to suits against a state by one of the state's own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S.Ct. 504, 506-07, 33 L.Ed. 842

---

[6] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

(1890). Further, "the Eleventh Amendment prohibits suits against state officials where the state is, in fact, the real party in interest." *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) ("For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit."). The preceding precedent means that a plaintiff cannot circumvent the bar of Eleventh Amendment immunity simply by suing state agencies, state officials, or state employees, as opposed to the state itself.

While Eleventh Amendment immunity operates broadly to shield a state, its subdivisions, instrumentalities, and agents from liability, it is not absolute. The Eleventh Circuit recently summarized the three situations in which the Eleventh Amendment will not protect a state from suit:

> The Supreme Court has recognized three situations in which there is a "surrender" of Eleventh Amendment sovereign immunity: (1) when a state waives its Eleventh Amendment sovereign immunity and consents to suit in federal court, *see Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 71 (1985); (2) when Congress, acting pursuant to § 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so, *see Seminole Tribe of Florida v.*

10

*Florida*, 517 U.S. 44, 55-73, 116 S.Ct. 1114, 1123-32, 134 L.Ed.2d 252 (1996); and (3) when a state official is sued for prospective injunctive relief to end a continuing violation of federal law, *see id.* at 73, 116 S.Ct. at 1132; *Ex parte Young*, 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908).

*Harbert International, Inc. v. James*, 157 F.3d 1271, 1278 (11th Cir. 1998).

In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Supreme Court held that Congress, acting pursuant to the powers granted by section five of the Fourteenth Amendment,[7] validly abrogated Eleventh Amendment immunity to claims based upon Title VII. "We think that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts." *Id.* at 456, 96 S.Ct. at 2671. Sheriff Roden does not contest this point.

On the other hand, the State of Alabama has not waived, nor has Congress validly abrogated, Eleventh Amendment immunity with respect to § 1983 claims based on alleged deprivations of the Fourteenth Amendment to the United States Constitution. *See* Ala.

---

[7] "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5.

Const. of 1901, Art. I, § 14 ("That the State of Alabama shall never be made a defendant in any court of law or equity."); *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) ("Congress has not abrogated Eleventh Amendment immunity in section 1983 cases.").

Nonetheless, the "prospective injunctive relief" exception to Eleventh Amendment immunity applies to plaintiff's § 1983 claim against Sheriff Roden. *See Welch*, 57 F.3d at 1008 (reversing the dismissal of the present plaintiff's § 1983 official capacity claims against the previous Sheriff of Cullman County "to the extent that she may seek prospective injunctive relief but not retroactive money damages"). Plaintiff's present complaint contains a claim for prospective injunctive relief; she asks this court to:

> [g]rant ... a permanent injunction enjoining the defendants that their actions were violative of the rights of the plaintiff as secured by the Equal Protection Clause of the 14th Amendment of the United States Constitution, 42 U.S.C. § 1983[,] Title VII of the Civil Rights Act of 1964, amended by the Civil Rights Act of 1991.

(Doc. No. 1, at ¶ 20.) The parties also stipulated at the status conference that plaintiff seeks reinstatement to her former position as a Cullman County dispatcher. Accordingly, to the

extent plaintiff requests prospective injunctive relief, her § 1983 claim against Roden will be preserved for trial.[8]

**D.   Has Plaintiff Stated A Claim Against Chief Deputy Waldrop For Purposes Of Title VII?**

Clearly, she has not.

Indeed, plaintiff concedes she has not stated a claim against Chief Deputy Waldrop under Title VII, because Sheriff Roden, not Waldrop, is her "employer" for purposes of that statute. Moreover, in plaintiff's predecessor action, *Welch v. Laney*, the Eleventh Circuit also addressed plaintiff's contention that the person then serving as Chief Deputy Sheriff of Cullman County (Michael Pruett, Larry Waldrop's predecessor) was plaintiff's "employer" for purposes of the Equal Pay Act and Title VII. *See Welch*, 57 F.3d at 1011 ("Likewise, Chief Deputy Pruett had no authority to exercise any control over Welch; he had no authority to hire or fire her and was not authorized to modify the terms of the employment.").

It also is well-established that Title VII does not create personal liability under circumstances such as those alleged by plaintiff. *See Lissau v. Southern Food Service, Inc.*, 159 F.3d

---

[8] *See supra* note 3.  In light of the fact that the doctrine of Eleventh Amendment immunity severely limits the remedies available to plaintiff upon proof of a violation of § 1983, but does not do so with respect to Title VII, this court will focus its jury instructions regarding damages on those recoverable under the latter statute.

177, 181 (4th Cir. 1998) (noting that every circuit court
confronting issue of individual liability under Title VII has
concluded that individuals are not liable, because the "remedial
scheme [of Title VII] seems so plainly tied to employer, rather
than individual, liability"); *Busby v. City of Orlando*, 931 F.2d
764, 772 (11th Cir. 1991) ("The relief granted under Title VII is
against the *employer*, not individual employees whose actions would
constitute a violation of the Act.") (emphasis in original).
Accordingly, plaintiff's Title VII claim against Chief Deputy
Sheriff Terry Waldrop is due to be dismissed, because he is not her
"employer."

**E.   Has Plaintiff Stated A Claim Against Chief Deputy Waldrop For
      Purposes Of 42 U.S.C. § 1983, In Light Of The Fact That The
      Complaint Does Not Specifically Allege That He Violated The
      Fourteenth Amendment And That Any Relief Against Waldrop For
      Violation Of That Statute Seems Redundant Since Plaintiff
      Brings The Same Claim Against Sheriff Roden?**

Even though the Eleventh Circuit has observed that "[b]oth [an
Alabama] sheriff and his chief deputy may be liable for
unconstitutional conduct under section 1983 when personal
involvement by both officers is alleged," *Terry v. Cook*, 866 F.2d
373, 379 (11th Cir. 1989); *see also Welch*, 57 F.3d at 1008-09
(reinstating § 1983 claim against chief deputy sheriff for
prospective injunctive relief), plaintiff concedes she has not

stated a viable § 1983 claim against Chief Deputy Waldrop.

She failed to allege he violated the Fourteenth Amendment separate from Sheriff Roden.  Rather, she claims Waldrop, along with Roden, "violated her rights under Title VII and the Civil Rights Act of 1991 by terminating her in retaliation for opposing unlawful employment practices."  (Doc. No. 1, at ¶ 15 (emphasis added).)  As to her § 1983 claim, plaintiff states only that Sheriff Roden's actions violated the Fourteenth Amendment.  (Id. at ¶ 18.)  These allegations do not meet the standard articulated by the Eleventh Circuit in Terry.

Further, plaintiff's § 1983 claim against Chief Deputy Waldrop is redundant, in that she will receive the injunctive relief she requests by proving that Sheriff Roden intentionally discriminated and retaliated against her in violation of the Fourteenth Amendment.  Accordingly, that claim is also due to be dismissed, and Chief Deputy Waldrop is due to be dismissed from this action altogether as a party-defendant.

**F.   Has Plaintiff Stated A Claim Against Cullman County Commissioners George Spear, Douglas Terry, And Ronald Dillashaw For Purposes Of 42 U.S.C. § 1983 By Proving That Sheriff Roden Acted As The "Ultimate Repository Of County Authority" In Firing Her From The Dispatcher Position With The Cullman County Sheriff's Department?**

Although this question requires more extended discussion than

the preceding issues, the eventual answer is "no."

The Cullman County Commission upheld Roden's decision to terminate plaintiff.   Plaintiff articulates her § 1983 claims against the members of the governing body of that political subdivision in the following statement:

> 18.   The plaintiff contends that the defendant[] Cullman County Commissioners denied her equal protection of the law by intentionally discharging and retaliating against her; whereas, similarly situated men have not been terminated for similar or more serious acts.   <u>The policies and procedures were delegated to Sheriff Roden by the Cullman County Commissioners.   The Cullman County Commissioners allowed Sheriff Roden to act as the "ultimate repository" of the county's authority in setting policies and procedures regarding discharging employees.   The Commissioners are liable for the actions of Roden[,] who the plaintiff contends terminate[d] her.</u>

(Doc. No. 1, at ¶ 18 (emphasis supplied).)   The last sentence of that paragraph confirms that plaintiff seeks to hold the Cullman County Commissioners liable on a theory that they are somehow at fault for the alleged transgressions of Sheriff Roden, because they supposedly vested him with final decision-making authority regarding the status of plaintiff's employment.   Accordingly, upon consideration of the language in plaintiff's complaint and relevant evidentiary submissions, this court does not construe plaintiff's complaint as stating a claim against the Cullman County Commission for direct discrimination.

16

There is no doubt that plaintiff's inclusion of the commissioners in their official capacities as defendants is essentially a claim against the Cullman County Commission itself. *See Welch*, 57 F.3d at 1009 ("As stated above, where a plaintiff brings an action against a public official in his official capacity, the suit is against the office that the official represents, and not the official himself. ... Welch's claim against the commissioners in their official capacity was thus a claim against the Cullman County Commission."). In sum, therefore, plaintiff has asserted § 1983 claims against a representative of not only the State of Alabama (Sheriff Roden), but also representatives of Cullman County (Commissioners Spear, Terry, and Dillashaw). The operative question thus becomes whether the county can somehow be held liable if plaintiff establishes that Sheriff Roden violated Title VII and 42 U.S.C. § 1983 by discriminating against her on the basis of sex and retaliating for her prior federal court action.

In *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285 (11th Cir. 1998) (*en banc*), the Eleventh Circuit reiterated that "[a] local government [such as a county] may held liable under § 1983 only for acts for which it is actually responsible, 'acts which the

[county] has officially sanctioned or ordered.'" *Id.* at 1287 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (other citations omitted)). To evaluate local government liability under § 1983, a court must "'identify those official or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *McMillian v. Monroe County*, 520 U.S. 781, 785, 117 S.Ct. 1734, 1736, 138 L.Ed.2d 1 (1997) (quoting *Jett v. Dallas Independent School District*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989)). Should a court conclude that a local government body vested unfettered decision-making authority in the hands of a particular official, and that official exercised that authority in an unlawful manner, the local government may be held liable under § 1983. *See Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978) (noting that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983").

18

On the other hand, the Eleventh Circuit has "consistently recognized and given effect to the principle that a municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." *Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997) (collecting cases). Provided the administrative review process is not a mere "rubber stamp" of the initial official's decision, a local government cannot be held liable under § 1983, since it has not made that official the "ultimate repository of county authority."

As an initial matter, this court concludes plaintiff is employed in the service of Cullman County, not the State of Alabama, and thus is able to avail herself of certain administrative remedies provided by local acts.[9]  The local acts relevant to plaintiff's complaints of discrimination and retaliation by Sheriff Roden are Alabama Act No. 80-549 and Alabama Act No. 92-486.  The first was enacted for the stated purpose of providing

> a personnel system for Cullman County, Alabama, and to empower and direct the county commission of said county

---

[9] *Compare* Love v. Roden *et al.*, Civil Action No. CV-98-S-159-NE (N.D. Ala. 1998) (Smith, J.) (noting that Cullman County deputy sheriffs are state, rather than county, employees, and thereby unable to take advantage of local acts granting Cullman County employees certain benefits and rights).

to promulgate rules, regulations, and procedures to govern the hiring, transfer, removal, salaries, promotions, demotions, training, and official conduct of <u>all regular</u>, <u>full-time employees of the county</u>; to establish a county personnel board; to provide for the appointment and compensation by the members of said board; and to provide for the powers, duties, and authority of the personnel board in the personnel administration of the county.

Ala. Act No. 80-549 (preamble) (emphasis supplied).   Numerous sections of that act are relevant to this action.

> **Section 1.  Application.**  This Act shall apply to and have application in Cullman County, Alabama, <u>to all regular full-time employees whose wages, salaries, and benefits are provided in whole or in part from the general fund of the county</u> and other designated and special funds under the management and administration of the county commission of said county, <u>including regular full-time employees of the sheriff's department</u>, revenue commissioner's office, probate judge's office, and juvenile probation office, including the chief probation officer, <u>except as limited in Section 2 of this Act</u>.

> **Section 2.   Exception to Application.**  The provisions of this Act notwithstanding, <u>the sheriff of Cullman County shall be authorized to set employment policies for the sheriff's department of Cullman County and subject to the provisions of Section 10 and Section 11 of this Act, to promote and demote personnel within the sheriff's department without consulting the Cullman County commission or personnel board</u>.  The sheriff of Cullman County shall be authorized to hire law enforcement personnel for the sheriff's department of Cullman County provided such personnel meet the requirements of the Alabama Minimum Standards Act. Applications for employment with the sheriff's department shall be submitted to the sheriff's department.   <u>The Cullman County commission and personnel board shall not be authorized to set policies on employment practices within the sheriff's department</u>.  All law enforcement

20

personnel within the sheriff's department shall be considered skilled employees and their salaries set in accordance with such skilled status. <u>Provided, however, that nothing in this section shall be construed to limit, abridge, or interfere with any right or protection provided any employee under this Act</u>. Elected officials shall be authorized to reject any applicant for employment within their respective offices.

*Id.* §§ 1-2 (emphasis supplied).

Section 10 of Act No. 80-549 provides, in relevant part, that any Cullman County employee "may be dismissed ... by the <u>commission</u> for, but not limited to, any violation of the provisions of this Act or whenever the good of the service will be served thereby or the employee's work, performance, conduct on the job, or insubordinate attitude so warrants ...." *Id.* § 10 (emphasis supplied). A literal interpretation of that section of Alabama Act No. 80-546 indicates that the Cullman County Commission has the final say in the termination of county employees. *See id.* ("The commission may authorize any department head or other supervisory employee to carry out the provisions of this section, provided, however, that any action to terminate shall only be with the prior written order of the commission.").

Section 11 of that act permits county employees "to appeal any disciplinary action taken against him," first to the Cullman County Personnel Board, and then to the Cullman County Commission. *Id.* §

11.   Section 11 provides, in relevant part:

> Upon the filing of such charges [by an aggrieved employee], the said chairman [of the Cullman County Personnel Board] shall call a meeting of the board to be held within thirty (30) days after the filing of such charges to hear such grievance, and shall forthwith give notice by certified mail to the employee and the commission of the time and place of such meeting.
>
> . . .
>
> At the hearing before the board, the employee and his department head or supervisor shall each have the right to be represented by counsel, with the county authorized to employ legal counsel to represent the interest of the county. ... At the conclusion of the hearing, and within five (5) working days therefrom, the board shall recommend to the commission [appropriate action]. Such recommendation shall be in writing to the chairman of the commission, and the commission shall act upon such recommendation at its next regular or special called meeting, with such action becoming a matter of its official and public records. Such action of the commission shall exhaust the employee's private remedy, and any further recourse shall be through the appropriate courts as provided by the law of the State of Alabama.

*Id.* In sum, sections 10 and 11 of Alabama Act No. 80-546 empower the Cullman County Commission to override disciplinary decisions pondered by the supervisors of county employees, after those decisions have been passed on by the Cullman County Personnel Board.

Alabama Act No. 92-486, approved on May 15, 1992,[10] amended

---

[10] Plaintiff was discharged on April 21, 1995. Accordingly, the amendment to Alabama Act No. 80-549 is relevant here.

Alabama Act No. 80-549 "so as to provide further for the sheriff's department to be included under the civil service system." Ala. Act No. 92-486 (title) (emphasis supplied). The amendment itself was slight, stating that "[e]lected officials shall be authorized to reject any applicant for employment within their respective offices." *Id.* § 1 (amending Section 2 of Ala. Act No. 80-549). The amendment of Alabama Act No. 80-546 by Alabama Act No. 92-486 leads to the inescapable conclusion that dispatchers are employed in the service of Cullman County, and thereby permitted to avail themselves of the administrative procedures set forth in the relevant local acts.

Further, the Attorney General of the State of Alabama has distinguished clerical and dispatch positions within a Sheriff's Department from deputy sheriff and jailer positions. In an opinion filed on April 29, 1996, the Attorney General discussed an amendment to Alabama Code § 17-1-7(d), which provides in relevant part that "any employee of a county or a city ... who qualifies to seek a political office ... shall be required to take an unpaid leave of absence from his or her employment ...." The question presented to the Attorney General was whether Sheriff's Department employees were subject to the mandatory "unpaid leave of absence" policy. The Attorney General distinguished state employees, like

23

deputy sheriffs and jailers, who were not subject to the policy,

from county employees, like dispatchers and clerical employees, who

were subject to the policy.

> A sheriff is an executive officer of the state. Federal and state courts have determined that deputy sheriffs are extensions of the sheriff and, therefore, state employees for some purposes. Accordingly, we are of the opinion that for purposes of § 17-1-7(d), deputy sheriffs are state employees, not county employees, and are not covered by the provisions of § 17-1-7(d).

> . . .

> With regard to jailers, Code of Alabama 1975, § 14-6-1 specifically provides that jailers are appointed by the sheriff. The sheriff may also dismiss the jailer. Therefore, the county commission is not considered as the employing authority of the jailer, and jailers are not subject to § 17-1-7(d).

> <u>As to clerical employees of the sheriff and dispatchers, they are generally considered county employees with the county commission as the employing authority</u>. Opinion of the Attorney General to Honorable E.O. "Cotton" Townsend, Sheriff, Winston County, dated June 17, 1985, A.G. No. 85-00388.[11]   <u>Furthermore, dispatchers, in most instances, and clerical employees of the sheriff generally are not considered law enforcement officers or peace officers. Therefore, they are subject to the requirements of § 17-1-7(d)</u>.

> . . .

---

[11]  In the Attorney General's opinion submitted to the Honorable E.O. "Cotton" Townsend on June 17, 1985, the Attorney General noted that "the [Winston] County Commission has the final authority to determine the hours of these employees [including dispatchers] to be hired and the number of hours which they work." The Attorney General distinguished dispatchers from deputy sheriffs and the chief clerk. *See* Opinion of the Attorney General to Honorable E.O. "Cotton" Townsend, Sheriff, Winston County, dated June 17, 1985, A.G. No. 85-00388, at 2-3.

> Deputy sheriffs and jailers are not subject to the provisions of § 17-1-7(d), and do not have to take an unpaid leave of absence or accrued vacation time or overtime when seeking election to a county office. <u>Dispatchers and clerical employees supporting the sheriff are county employees and are subject to the requirements of Code, § 17-1-7-d</u>.

Opinion of the Attorney General addressed to the Honorable Jack Page, 1996 WL 897381, at *1-*2 (Ala. A.G. 1996) (emphasis supplied) (other citations omitted).

Thus, the narrow issue this court must decide is whether Sheriff Roden acted as the "ultimate repository of county authority" in terminating the employment of plaintiff, a dispatcher for the Cullman County Sheriff's Department. Resolution of that issue, in turn, focuses on whether Roden's decision to terminate was subject to meaningful administrative review. If it was not, the Cullman County Commissioners must be retained as defendants in this lawsuit. If Sheriff Roden's decision to terminate plaintiff <u>was</u> subject to meaningful administrative review, however, then he did not act as the "ultimate repository of county authority" for purposes of § 1983, and the derivative claims against the Cullman County Commissioners must be dismissed.

Plaintiff exercised her rights as a county employee under Alabama Act No. 80-546, as amended by Alabama Act No. 92-486, to file a grievance regarding her discharge with the Cullman County

25

Personnel Board and, thereafter, the Cullman County Commission. The fact that Sheriff Roden permitted a dispatcher like plaintiff to grieve her discharge ultimately to the Cullman County Commission confirms that he does not act as the "ultimate repository of county authority" when hiring and firing clerical employees and dispatchers in the Sheriff's Department. Rather, ultimate decision-making authority rests with the Cullman County Commission. Plaintiff has proffered no evidence indicating that the commission merely "rubber stamps" the decisions of Sheriff Roden with respect to discipline of dispatchers. *See Morro*, 117 F.3d at 514. Instead, the evidence indicates plaintiff was given an opportunity to be heard at every administrative level. Further, this court is not surprised that the Cullman County Commission ultimately upheld Sheriff Roden's decision, given the circumstances surrounding plaintiff's termination.

For those reasons, this court concludes that plaintiff's § 1983 claims against the Cullman County commissioners should not proceed to trial. Because plaintiff has not pled any other basis to hold those defendants liable under § 1983, they are due to be dismissed.

26

**G.    If Plaintiff Does In Fact Prove That Sheriff Roden Acted As The "Ultimate Repository Of County Authority," Can She Collect Punitive Damages From Commissioners Spear, Terry, And Dillashaw Upon A Showing Of A Malicious Violation Of Title VII And 42 U.S.C. § 1983?**

Based on the courts findings *supra* at Section II.F, this question is moot.

### III. CONCLUSION

Resolution of the above issues demonstrates that plaintiff's complaint properly lies solely against Sheriff Roden, for alleged violations of Title VII and 42 U.S.C. § 1983.  The claims against all other defendants are due to be dismissed.

The court additionally finds that this action is ready for trial, now that those issues have been addressed.  Accordingly, the court will submit a proposed pretrial order to the parties for their review.

An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 6th day of June, 2000.

United States District Judge

27